Please rise. Illinois Telephone Corp. is in business now in session. This is F. Steve Poseidon. Thank you. Good morning everyone. Welcome and please be seated. Would you call the first case please? Case number 11-1212661 Ohio and Radius Incorporated v. Zoning Board of Appeals of the City of Chicago. Will the lawyers who will be arguing please identify themselves for the record? Mr. Henricus, if you'd like to begin. May it please the court, the city's zoning ordinance prohibits an advertising sign of the type at issue in this case if the sign would be within 500 feet of any expressways or toll roads as designated by the Chicago Department of Transportation. Based on that provision, the city's zoning administrator denied a permit for a sign on the facade of a building located immediately adjacent to one of the feeder ramps of the Kennedy Expressway. What was that based on? Do we have any idea? Of what the... The original administrator... Yes, the administrator's decision is in the record. Yes, but it's a one page letter. And it specifically says because the sign would be located within 500 feet of the expressway in violation of that provision of the ordinance. One under normal circumstances constitutes a designation. Is there a conventionally normal process by which expressways are identified other than through some form of claim or litigation or what have you? I'm not aware of any conventional form of designation at all. Are ramps normally considered part of the expressway? As far as I know, the only case in which there's been a consideration of what the ramps are is this case. Well, in this case, there really wasn't anything presented at that initial... I mean, I wouldn't call it here, would you? In front of the... The zoning administrator? Yes. No, there was an application to the zoning administrator and the zoning administrator based on whatever information she could glean from various sources was aware that the feeder ramps had been designated an expressway and so denied the permit on that. That was one of two grounds. There was another ground. The size of the sign? The size of the sign. That's fallen away. That's fallen away. But when you say from whatever she could glean, well, there's nothing in this record. Is there other than her letter? No, and there wouldn't be a requirement that there be. There's no hearing before a zoning administrator. Yeah. Well, in this case, there is an indication that the Illinois Department of Transportation said that this isn't part of the expressway. Correct. That email? The Illinois Department of Transportation, which has nothing to do with this ordinance, which specifically... Well, does the ordinance allow the city of Chicago to designate something an expressway if the Illinois Department of Transportation has already said it's not part of the expressway system? Is the ordinance allowed, would you think? Well, certainly. There's nothing in the ordinance that conditions the city's designation of a road as an expressway on anything that the Illinois Department of Transportation does. The ordinance specifically states that it depends upon a designation by the Chicago Department of Transportation. C-dot, not I-dot. Go ahead. What are the attributes of an expressway? What does that do insofar as contrasting that particular roadway with non-expressways? Is that just the name, or are there some formal consequences? Well, the formal consequences, of course, designation... Other than people crafted contracts that hang on the word expressway. Right. What else does it denote formally? Well, there's nothing in the record to indicate why the word expressway matters. We could all suppose what those things, why it matters. Distraction of signs on... But I don't... So far do we know what an expressway is intrinsically in a platonic sense. If Plato would have it in its essence, what is it? Well, no, it's whatever the Chicago Department of Transportation designates it to be for whatever purposes the Chicago Department of Transportation... So it doesn't have any existence aside from what it is designated at by some formality of a body politic that might have some connection with it, is that it? I'm not aware of any, but certainly nothing inhibits or restricts, limits in any way, C-dots, this determination... So it's strictly a legal construct of sorts, is that it? That's right. Otherwise, there would be some other reference instead of just what the Chicago Department of Transportation designates it to be. Of course, we would acknowledge that it has to be a reasonable designation, but here the feeder ramps certainly are reasonably designated as expressway. There was some reference in the record to a statement of one of the Chicago Department of Transportation employees that they defer to the Illinois Department of Transportation, at least that individual person chooses to defer to the Illinois Department of Transportation in designating an expressway. Well, there was testimony presented by the plaintiffs, by the owners of the building, that they spoke with a person or persons at C-dot and that the person that they spoke with said that C-dot does not have jurisdiction over the feeder ramps and that I-dot does. But I take it your position would be that if indeed such a person made such a statement, that couldn't bind the city. Certainly not. That's correct. What about the testimony in the record about the five other signs that are located along the same designated feeder ramp? Yes. If those signs are there, then certainly they fell through the cracks and they shouldn't be there. On the other hand, you did have Andrew White testify, and he had one of those signs, at least according to your opponents, he had one of those signs that found its way through what you now have determined to be prohibited. Well, the plaintiff's lawyer in the brief asserted that one of those signs is owned by the company that Andrew White works for. There's no evidence in the record that... Clearance channel, right? That's right. There's no evidence in the record that his employer actually owns such a sign. It's an assertion by the lawyer that he does. Why wouldn't you know it if you're putting him on as a witness? Well, we didn't put him on as a witness. He simply testified. He was called to testify at the hearing without anybody calling him. I don't know whether... The record does not state or have any evidence... There's no evidence in the record that Clear Channel Outdoor has one of those signs. But whether it did or not, of course, does not matter. There shouldn't be a sign there if it's within 500 feet of the expressway. Well, if there are presently, or if at the time that this petition was filed to have a sign, if the city had given other companies permission to have signs and denied this rate the right to have a sign, would that pose a problem? I don't think so. I don't think so. It would simply be an error. Administrative agencies make errors all the time. Well, wouldn't that show that they were arbitrary if they granted four other sign companies within 500 feet of the Ohio Theater the right to have a sign and deny it to ratings? No. It would, in my view, it could just as easily show that things don't... Report the inference, then, that the designation was made on or after October 14, 2009, which was five months after the plaintiff here made his application. Since there was no other direct evidence and disputed inferential evidence of any prior designation of that particular roadway as being an expressway. Well, it certainly wouldn't be inconsistent with... It's obvious that it wouldn't be inconsistent. So it would be a wholly new finding, lending support, that it was after the fact of the application, whatever those consequences may be. I'm not going to push you into that. Well, more would have to be certainly consistent with the notion that things fell through the cracks and that while with respect to any of those other signs and that as soon as that error is corrected, that error is ascertained, there will be a correction and that the signs will not be renewed. May I ask some questions about the state of the record? Is there any evidence in the record before us that for any of those other five signs that a permit was even ever applied for? That's correct as well. There is nothing in the record to indicate whether they were... We don't know whether the city has ever granted a permit for those signs in contravention of their decision in this particular case. That's correct. And if I take it from your argument that your position would be if they had, it would be mere negligence on the part of the people who issued the permits if they were issued and that it wouldn't in any way have stopped the city from asserting it in this particular circumstance. Right. And obviously, based on what Your Honor properly pointed out, and I thank you, there is nothing in the record to indicate that the applications were made and therefore no opportunity for the department to have ruled on an application. I'm sure you're also aware that the statute that was created to forbid these signs within 500 feet of the expressway in 2004 had a grandfather clause in it. So actually, these five signs that are referenced in the record on this map could have been grandfathered in. And the statute, I'm sure you're also aware, allows that those signs can basically remain in place and they can be continued to generate income for whatever building so long as they remain the exact same size. I mean, I'm sure you're aware of the entire ordinance. So these signs could have been there before as opposed to your suggestion that they negligently slipped through the cracks. It's very possible they were there. That's correct and they may well have been there. Let me ask you this. Now, when the judge heard this in administrative review, did she indicate on the record her reasons? You probably weren't there. I wasn't there. All right. And there wasn't a court reporter there. There wasn't a court reporter. No, but her order in this case does mention specifically that she, and she specifically said there's no evidence in the record that CDOT had designated the ramp and expressway prior to and then she put the date of the memorandum in the record. And what would you say to that? Was that an inaccurate interpretation or was that correct? That was inaccurate because Andrew White did testify at the hearing and he specifically said that he had conversations with CDOT personnel prior to the application, in this case, even being filed with the zoning department and that he was told in that conversation that the ramps had been designated in an expressway and the permits could not be. And then there was the testimony of, I forget who, if it was Buddington or one of the owners of the building, that five different people from the city of Chicago had told him that this was not considered part of the expressway. Well, he met with a group of five people who he said, said that the expressways were under the jurisdiction of IDOT, or not even under the jurisdiction of the city of Chicago. You can finish. On the other hand, White's testimony simply consisted of the assertion that he talked to CDOT, but he doesn't designate any individual that he talked to. So how does that, I mean, forgetting about the fact that it's hearsay, which may well be permitted at an administrative hearing, but what kind of weight should be given to hearsay that doesn't even designate the informant to see what level that informant is employed, whether that informant has any authority to make those assertions, or forgetting even about authority, that he has any reliable knowledge on which to make those assertions? Well, certainly, he was not cross-examined on this. There was never an objection made, even at a testimony hearing. So if the trial judge wanted to discount that testimony, don't you think that it was within the area of at least the trial judge's discretion to do so, based on the low quality of that testimony? Even if it would have otherwise been admissible, its weight could be discounted if at least under a discretionary standard. Well, the trial judge on administrative review would not be the fact finder. The fact finder would be the ZBA, the Zoning Board of Appeals, and the Zoning Board of Appeals did not in any way suggest that White's testimony was less than fully credible. And, in fact, the ZBA in its decision specifically determined that. So under a manifest weight of the evidence standard, you mean the trial judge on administrative review would have been precluded from negating an evaluation by the board itself? Giving credence to evidence that could otherwise have no value or de minimis value? Well, I certainly wouldn't think that it would have de minimis value, merely because the person's name, the persons with whom White spoke were not named. And, in fact, if that were the case, Well, there are other factors involved here, too, aside from the fact that White could well have been a biased witness since he was a competitor of the building corporation itself. And that would have been reflected in the fact that she didn't even name him in her decision as being someone providing any evidence. But, again, the ZBA, whose decision it is whether or not a witness is biased, never said anything to suggest that it thought that he was biased. And, moreover, the plaintiff had the burden of proof in this case at the ZBA hearing. And the plaintiff's witness Not necessarily the burden of going forward, as you yourself pointed out. Not necessarily the burden of going forward, but White's testimony is certainly enough to present enough evidence to go forward. And the plaintiff never gave the names of any of the people at that meeting. Only the plaintiff's lawyer gave the names of the people, supposedly, at that meeting. So even the names of those people at the meeting that Buddington attended is hearsay as well. And if White's testimony is considered de minimis, then the plaintiff's testimony, by the same token, would be considered de minimis. And on that basis, the plaintiffs would not have satisfied their burden of persuasion, the burden of proof in this case. Besides this White gentleman, what other evidence is there that the Chicago Department of Transportation had ever designated this ramp area an expressway? There's no evidence either way. There's no evidence either way. So has everything really been falling in the lap of White? Well, no. The plaintiffs had the burden of proof. They had the burden of proving that it hadn't been designated on the feeder ramp prior to the date of that memorandum, and there's no evidence. I thought they presented the email from the Illinois Department of Transportation who indicated that we do not consider this to be any part of the expressway system of Illinois. But that's the Illinois Department of Transportation. They have no authority under the ordinance to designate or not designate. But what I'm asking you is should there be something that would suggest that someone declared this an expressway besides a person named White who didn't get a permit? Well, the issue didn't come up until the hearing when the memorandum was presented, and a plaintiff with the burden of persuasion did not ask for a continuance. What if we consider that the city council, the aldermen, all those steps along the way, they approved this permit, and they were aware of their own ordinance, I'm assuming. So why were all these preliminary matters going forward and basically everyone along the way? I mean, it's not just one little stop to get that to the point before the zoning administrator, correct? Well, that's correct. And the city council has to actually pass an ordinance granting the permit, true? That's correct. And they had to, there was testimony about going, first the aldermen allowed them to proceed. They had to get petitions signed within the neighborhood. Then they went to the city council. Then the city council had to pass an ordinance to permit the permit. And then is the next step in front of the zoning administrator? Well, which order, I'm not sure. But in order for the permit to issue, the zoning administrator had to grant. And she didn't, and she didn't because she concluded that CDOT had designated it the ramp and expressway. Yes, but the problem with this whole situation is that there's really no evidence presented to her. It goes before the zoning board and then we have these differing pieces of evidence. But I don't know what she decided anything on because her statement denying it doesn't really, she just says it's an expressway. Well, let me ask the question this way because we seem to be going around and around in a lot of these questions. I want to ask you this. Isn't it the purview of the zoning board administrator to, in the first instance, make a factual determination about whether or not this is an expressway? Well, I would say it slightly differently, Your Honor. I think that's correct. It's up to the zoning administrator to ascertain whether CDOT had made that designation. There's no requirement that the zoning administrator set forth whatever evidence she relied on. She only has to grant or deny the permit. And she denied the permit based on two grounds. Her determination, focusing on the pertinent one, that the Chicago Department of Transportation had, in fact, designated it as an expressway. And the only question that really presents itself in that context is whether that decision was against the manifest weight of the evidence under the record in this case. Well, actually, it seems to me that the manifest weight standard applies to the ZBA's determination. Well, that's what I'm talking about, not CDOT's, but her determination, the zoning board administrator's determination that CDOT had designated this as an expressway. Now, once she made that determination, then the plaintiffs took the case to the next level, which is the ZBA. The ZBA then held a hearing at which evidence was presented de novo. And after that hearing, the ZBA issued a ruling. It's the ZBA's ruling that is subject to the manifest weight standard, both in the circuit court and in this court. How would you think that the plaintiff here satisfies the burden of proof if he has it? And we discount the earlier case that says that the party that has the affirmative has the burden of proof. But even if we accept Justice Stamos' analysis in the Board of Trade case, that that's not always so. It's not an absolute, incidentally, according to Justice Stamos. It's an allocation based, I think, to some extent, on degree of difficulty in offering negative proof. What would that negative proof consist of? Would it be enough to show that the CDOT never made a designation formally? How else would you prove the negative? To prove the negative, they would have to get information from CDOT, who's not a party in this case, that CDOT had not made the designation. Why isn't this hearing sufficient to either present that proof or to negate that proof? Insofar as the submissions that were made by CDOT during the course of this hearing would be the sum total of evidence to be presented on that issue. And if the trial judge would then say the evidence is insufficient to show a designation, why would that then constitute a compliance, a sufficient establishment of the plaintiff's burden of satisfaction? Why wouldn't that satisfy that burden? For a couple of reasons. First, the ordinance only says, only turns on, whether or not a designation has been made by CDOT. First of all, it doesn't say when. When CDOT can't produce anything other than an October 14th memorandum, if the trial judge would say that the other submissions, whatever they were, were insufficient to show such a designation. And the only sufficient designation would have been through the memorandum, but because it was issued after the fact, it should not bar the applicant who preceded in his application the issuance or preparation of that memorandum. Why wouldn't that satisfy the burden? And I'm not saying that the October 14th memorandum, just because it comes on October 14th, is invalid. But I think I'm going to hear what you have to say on that before I conclude that. The October 14th memorandum is silent concerning when the designation has been made. It's simply evidence that designations have been made. There was no issue. Now, why wouldn't the judge be free to assume that the designation reported in that memorandum does not precede the date of that memorandum? I mean, what is the judge supposed to speculate here and say, since this memorandum was issued on the 14th, it must have been so from the beginning of the world, so to speak? No, but the opposite isn't the case either. The memorandum is simply silent as to when the designation was made. The plaintiff has the burden to prove both. How can the plaintiff prove against the only submissions and full opportunity of the city to present contrary evidence? In point of fact, the only reason why I could see that the proof of a negative doesn't shift the burden of persuasion is the act of discovery. Because the plaintiff could take discovery and find out in advance what it is that his opponent has in proving or disproving the negative. Now, here the entire two hearings were discovery. The board, under the scenario that you're supposing, the board would have to anticipate not only that there would be two issues. One issue would be, has CDOT designated the ramps and expressway? The other issue would be, when did that happen? The ordinance only says that there has to be a designation of the ramps and expressway. So you're shifting in now to the other aspect here as to whether you're asking, well, supposing it was October 14th, so what? No, I think respectfully, aren't you saying that you had no, the city would not have any prior notice that that was going to be a contested issue when there actually was a memorandum evidencing the designation? And so what you're arguing is it would be unfair to say the city had to anticipate that and present affirmative evidence to the contrary. That's correct. At the hearing, the memorandum was presented to evidence. There had been no suggestion prior to the hearing that the timing of the designation was an issue at all. Once the memorandum was presented at the hearing, plaintiff's counsel said that there's a problem here because we don't know when this designation was made. Are you indicating then that there would have been other evidence showing such a designation as having occurred five months earlier, minimally, to establish that designation, but for the lack of notice to the city that it would have to satisfy that proof? Well, certainly the record doesn't indicate whether there is any such evidence, except that White said that he had been told that it was, which would support it. But otherwise, there might have been a holding back here. No, I don't think so at all. Then why wouldn't the judge then have the latitude of assuming that what was presented is what there was? Well, the plaintiff at the hearing could have said, look, we want to know when that designation was made, and then ask for a continuance at the hearing to undertake the very discovery that Your Honor is proposing. But was that really necessary when the full hearing took place twice, I believe, right? No, Your Honor. Once before the ALJ and at least once before the ZBA. No, the ZBA conducted the hearing itself, and there was only one hearing. At that hearing, again, the plaintiff had the burden of persuasion on the issue of when the designation was made. But then the judge would have to assume that there could have been a holding back by CDOT, by the city of whatever evidence it had, instead of the city proceeding, emptying its pockets, so to speak, of whatever there was to establish the designation. Well, that would have been an unwarranted... I'm only asking from the perspective of the trial judge. That's as far as we're going. It's not determining what we're going to be doing up here. With due respect to the trial judge, the trial judge, I think, simply overlooked the notion that the plaintiff had the burden of producing evidence, of production of persuasion of the evidence. The plaintiff would have to look to the city's parties, clients, so to speak, if nothing else, to obtain that evidence. There are no other sources, generally, for establishing a negative than to look inside the pockets of the party having the affirmative. And why wouldn't these hearings have satisfied that kind of determination? Well, at the hearing, had the plaintiff simply said, we have announced not only do we have a problem here, but let's get at the bottom of this problem, because I, the plaintiff, have the burden of proof on this issue.  Then I'll contact CDOT and find out when they designated the Ransom Expressway. I'll get a witness to come on and state whether the designation had been made prior to the memorandum or not. And then the hearing would resume. That evidence would be presented, and the ZBA would have had that evidence in order before its ruling. But the plaintiff didn't do that. But did the plaintiff present evidence that approximately five different people from the city of Chicago had informed NORCON or the two representative owners or even Buddington that this particular area was not designated an expressway, that they relied on IDOT for that determination? They actually said that IDOT is the officials of CDOT with whom the plaintiff spoke were obviously printed to IDOT. And then IDOT said this isn't part of the expression. That's right, but IDOT has nothing to do with anything. Let me just ask you this. Is there anything that would prohibit the petitioner from seeking a permit again since this obviously failed? Would there be anything that would prohibit someone from making a new request, go through the whole thing again? You can always make a request. What explanation do you have for the city actually passing an ordinance to allow for this particular sign? How did they get that far where the city council actually voted to pass and passed an ordinance to permit the sign? Actually, I don't think there's anything in the record indicating the form in which the city actually acted. Well, they have to. They have to actually pass an ordinance to get permission for the sign, and that was done. Yes, but of course. In light of this ordinance. I mean, what was that all about? I'm not sure how that works. What I do know is that whether the sign could issue depended on. The formal stamp of approval by the zoning administrator. Actually, and it's of course the zoning administrator's expertise in knowing the particular ordinances that are already, that she has to administer, that there's a particular ordinance that has a particular provision in it concerning the distance. The problem with the zoning administrator's order is that it really doesn't rely on anything in particular other than maybe. I mean, it was conceded that this sign was within 500 feet of the actual Ohio ramp. But whether the Ohio ramp was designated by the Chicago Department of Transportation as an expressway, clearly was not something that she put into her original order denying it. Well, that's correct, and the administrative process does not envision that. It envisions the zoning administrator ruling. Yes. And then if the permit's denied, that the applicants would then appeal to the ZBA. And then the ZBA would actually have a hearing at which all the evidence is presented, and that happened. And in this case, the evidence, there had been nothing in advance suggesting that the timing would matter. The evidence of the memorandum was presented, and the plaintiff had an opportunity to put the brakes on that hearing in order to bring in evidence that would have indicated when that designation was made. But as we also argue in our brief, and Your Honor correctly pointed out, Your Honor Gordon, correctly pointed out, the ordinance does not specify when that designation could be made. The courts reviewed the decision of the ZBA. Even if the zoning administrator had been mistaken in concluding that CEDAW had made the designation at the time she ruled, at the hearing before the ZBA, evidence was presented in the ZBA's decision that that matters. And so even if the designation had been made after the zoning administrator rule, and there's nothing in the evidence suggesting that, that designates the ZBA determination. The ZBA exposes that as not a criminal matter. There's no constitutional implications in its retroactivity, except gross unfairness, because parties don't make these plans gratuitously. It costs a lot of money, as you know, for developers to prepare, make a presentation that would pass through the alderman and pass through the city council. There are lawyer's fees to be paid, plans that are made, et cetera, et cetera. And we're not necessarily dealing here with a single sign. It could be the construction of an entire building, which could entail the retention of an architect. And then for the city to come in afterwards and say, well, we don't have anything before, but we're going to add now, there's got to be something of that. It stimulates a reviewing court to look long and hard to see if that's kosher. Well, in connection with that, I would point out, though, that the notion of gross fairness is ordinarily the subject of a due process concern, a constitutional concern, and the plaintiffs do not contend that there was any due process violation here that loomed in this case at all. If I may, with my few remaining minutes, you know, we also asked this court to reverse the portion of the circuit court's judge decision ordering the zoning administrator to issue the permit. The decision on review in circuit court was the ZBA's decision, not the zoning administrator's decision. So the administrator's review law authorized the circuit court to give appropriate directions only to the ZBA. The court had no authority to order the zoning administrator to do anything at all. This court should have. Well, of course, you do have mandamus available, which would have ultimately accomplished the same thing. Once the reviewing court holds that there is no basis, legal grounds, to withhold the permit, the next step is to mandamus the employee who writes these permits to do so, and in this particular case there might be necessity for two layers of mandamus, one to the ZBA and the next one down to the lower level, and probably both could have been done simultaneously. So the question is, is that in itself sufficient to move that issue? Well, the issue... You do have Senn Park and a whole slew of Supreme Court cases that will authorize mandamus without invoking sovereign immunity once it's a ministerial job at that level. We're simply pointing out that as a formal matter, the circuit court was reviewing a decision of the ZBA and should have issued her directions to the ZBA, whatever those directions might be, and not bypassed the ZBA and ordered the zoning administrator to do anything at all. We're only addressing this in the sense that you've been urging that we adjudicate that problem, no matter which way we would decide otherwise, even if the issue is mooted, and your opponent refuses to take that issue seriously because he's counting on the fact that if he gets the adjudication that he's seeking, and there's no indication, I hope, for me which way that's going to go, that he's counting on the fact that the employees who are responsible for writing these permits will do their job. Now, you claim that it can go back to the administrative agency to hear more evidence, and that intrigues me because that means it turns all of these decisions that we're about to make into advisory decisions. They certainly would lack finality, and they could be overturned by subsequent actions on the part of the board, and I looked for case support, and I found them. I'm sort of very curious about that. Well, if I understand your honor correctly, again, just to help me think about this, the designation, the administrative review law, did not authorize the circuit court to give any directions to the zoning. But you're arguing that in that event, since that didn't happen, it could go back to the zoning board, who could then hear more evidence and satisfy whatever deficiencies we might find up here if we do, so that it would neutralize whatever it was that we ruled on if we should have decided that there was an insufficient, that the plaintiff satisfied their burden of persuasion, that there would be no res judicata application to that at that point, and it would be in the hands of the ZBA to determine where it wants to go from there. And that's a, you know, that was a very interesting position to take, and I looked for some cases where they didn't find that. Let me say that. If your honors were to reverse and remand the case to the, and reinstate the ZBA's decision, then it's completely mooted. But if we should affirm the circuit court, it wouldn't be mooted, but we cannot at that point affirm the circuit court's designation of the, that the voting board issue the permit. Well, if your honors. Because, you say, now that may be. And I'm not raising that as an issue. If the Administrative Procedure Act so limits the board and there is some indication that it does, then the court can't designate someone else. The problem with that is that you don't have to designate anybody else, because at that point it becomes obligatory on the board to do its duty and satisfy its legal requirements to issue the permit. But you say no, because the voting board of the field can hear additional evidence and change the verdict as if that judgment never occurred, which would then transform that judgment in our review into a futile process. Well, I'm assuming that if, as your honors indicates, the court were actually to consider and decide that the plaintiff didn't have the burden of proof or met that burden of proof and reaffirmed the circuit court's decision and then properly indicated that the remand should go to the ZBA, then you're absolutely correct. The ZBA would be bound by the mandate of this court. One would think. Right. But because of the complexity of the way the issues were presented, it's unclear exactly what the basis of a ruling would be here. And in the event that this court did not foreclose a further hearing on remand by the ZBA, But it's obvious that the circuit court foreclosed it with its designation. Yes, but that was, in our view, again, without ultraviolence. The court did not have authority to do that. What you meant to say is that they can't do that because we're still open to remand for further evidence, so to speak. But then that's frankly, well, all right. Let's satisfy ourselves with that. All right. And as you sit down, I just want to make sure both sides know that you've miscited the number of the case. Things are bad in our litigious society, but to my knowledge, there weren't 117,000 cases filed in the Chancery Division in 2010. There's an extra zero at the end. We apologize. Thank you. Mr. Burke. Good morning, Justices. Stephen Burke on behalf of the Japanese. Also with me today is Mr. Charles Norrish, one of the two owners of the subject property. Justices, in my view of this case, this isn't strictly about zoning law, but fundamentally about property rights. The owners purchased this property and built this building and saw it put a sign on the property. That right, or the ability to put the sign on the property, was denied by the city of Chicago, according to the zoning ordinance. Illinois law is very clear that any zoning limitation on the use of one's property as an abrogation of property rights must be strictly construed, and where there is any ambiguity, must be construed in favor of the property owner.  Well, the ambiguity is whether or not there was ever any designation of the Ohio State. Well, why isn't the October 14th designation in there? Because it's after the fact, Your Honor. So what? What is there? What have you shown us to prohibit that designation from having been made later on? Particularly, supposing that designation would have been a memorandum saying, and we've always considered it so, to have been an express way. So that it's not a new designation, but a historical one. Justice, that's the problem here. Because that October 14th memorandum did not refer back to some earlier designation. It merely said, as of that date, it said, we consider the Ohio Theater- Well, that's because it first became an issue when permit was sought. Exactly. But. But. How is that conclusive as to the date that the consideration was made, one way or the other? How can you argue that the absence of a reference back to the date of the initial designation is evidence that it was first designated at the time the ink was drying on the document that was presented? I don't understand that. For this very simple reason, twofold. Number one, we had no ability to control or obtain or to reach into CDOT's offices and find this alleged designation. That's number one. That's number one. But number two, after the ordinance was passed granting the permit, and when that ordinance and everything was taken to the zoning administrator, that's when we were turned down. That ordinance was passed, though, subject to compliance with the zoning code, was it not? There's no question about that. So when the city approved that, they approved it subject to compliance. Absolutely. And we've never taken the position that ordinance gives us an automatic right to assign. But it's at that point in the record, it demonstrates prior to June 18th. June 18th, 2000. Counsel, did you make an effort here to take discovery when you say we couldn't have found out in advance? What I'm saying? I didn't tell you. You didn't? Well, what makes you think that the city of Chicago or the CDOT wouldn't come forward with that memorandum during the discovery phase? Justice, after we were turned down. Why can't it cure while this is an ongoing process? They had that opportunity. These meetings. Well, it's met at the hearing. With the October 14th memorandum. These meetings with CDOT and the interview and meetings with six different CDOT people, those all occur prior to the written determination on June 18th, 2009, denying the permit. That was the final step. The IDOT email was, I believe, May 5th, 2009. All of this investigation was going on on behalf of the owners with both CDOT and the Illinois Department of Transportation when we were referred there during this period. When that information was presented, and this is in the record, to the zoning administrator, the Zoning Enforcer Michael Grousy, I believe, he said we can't find any designation by CDOT. Let me ask you this, Mr. Burton. In the record, it is clear, isn't it, that IDOT and CDOT share maintenance of all the expressway ramps. Is that in the record? Isn't there a memorandum to that effect? There is an allegation that there is some agreement with regard to maintenance. And that's for the ramps. Oh, right. The city has maintenance of the ramps, of the expressways. Well, I don't know about all the ramps, but I believe it's in the record, Justice, that there is some requirement that the city maintain the Ohio Theater ramp or some portion thereof, because it's obviously very long, but there are the plantings there, etc. So, yes, the city does have some agreement with IDOT regarding the maintenance of that ramp. Well, without something in place that said this was part of the expressway, the ramps generally are things that you can't really escape from until you're off the ramp. True? That's true. So aren't they generally part of the expressway, just by their nature? Whether or not they're part of it, IDOT, which actually owns the Ohio Theater ramp and the Kennedy Expressway has determined that they are not expressways. How does that matter? If it's IDOT's determination, unless there's some finding of fact that the statements made by these other individuals somehow bind the city. How does it matter if IDOT looks at it as not part of the expressway, because you're interpreting a city ordinance that really has no reference to accepting the determination of the Illinois Department of Transportation, but tacitly retains the right to so define it as it chooses for purposes of its own ordinance. I agree 100%. And the ordinance allows CDOT to designate parts of the expressway that it considers to be expressways. Absolutely. And it even includes the term toll road, and we know that the city of Chicago doesn't own any toll roads. So clearly the ordinance presumes or gives IDOT, CDOT, the right. Well, Chicago doesn't own any more, Your Honor. Yeah, well it used to. What about the testimony from Mr. White, that he informed the people at NORCON that the city said this section is not permittable. Those were his words. Well, Mr. White, based on the record as it's written, and unfortunately there's not a visual record also, was completely dismissed by the commissioners. They recognized that this was a gentleman who had sought to lease the billboard from Mr. Norwich and was turned down. He wasn't dismissed by the commissioners. The commissioners simply didn't list him as a witness because he was a complaining party who occupied a different status in their configuration of the areas. Just as the word appearance could very well simply be restricted to a designation of the attorneys who appeared, as the same connotation that it has when you see it in a court file. Justice, my interpretation, one, I was there. Two, even reading the record where the commissioner is questioning him and basically cuts him off and says, well, your competitor didn't get the right to apply for a permit. That's number one. Are you saying that the zoning board does not have the discretion to give weight to his testimony? No. Because you can't say that. Otherwise, they're wasting their time. I completely agree. But in their opinion, they only cite one basis for upholding the zoning administrator's decision, and that was the October 14th memorandum. There was no mention of Mr. White. That doesn't really tell us that they dismissed him, though. It doesn't, other than the fact that they failed to cite him as reliant in coming up with their decision. Let me ask a question about the hearing before the ZBA. Somebody, whether it was you or some other attorney, said we have a problem when this memorandum surfaces. Is there anything that would have prevented your client's counsel from seeking testimonies from the author of the memorandum, or others within the Chicago Department of Transportation, to try to ascertain the effective date of this consideration, and whether it was something that came at the 11th hour or something that had been in existence in the understanding of the department for a period of time prior to that? No, except that we felt that that October 14th, 2009 memorandum proved our case. Because you extrapolated from the document that this would have had to have been the initial consideration, and that they never previously considered it. But as we, I think, discussed before, that supposition is not based on anything other than conjecture, where at least there is a possibility of having inquired at that hearing whether your supposition was correct or incorrect. And that was an opportunity that apparently was not seized. Well, it was not seized at the hearing from that standpoint. But where it was seized, and where there was an ongoing discovery, if you will, was in April and May and early June of 2009, where there were these meetings with CDOT, and there were the emails with IDOT, and that information was then presented to the zoning administrator to demonstrate that your decision was a faulty one because there has been no designation. And that's at that point where it was rejected by the zoning administrator, the evidence of the non-designation, if you will, whatever we were able to come up with, that was presented, rejected, and we got the official written denial, which was the basis for then for the appeal. So we had gone to CDOT and tried to get this information. They never said, here's the designation, or we do, in fact, designate it. We don't remember when or we don't remember how. There was nothing. Now, let me be clear on one thing. As I read this record in these briefs, I completely understand, and I'll just understate the emotion of frustration of trying to do things the right way and finding out at some point that what you had been led to believe by certain people that you spoke to all the way down the line was somehow contrary to the department's position or the city's position at a far later date when decisions with economic consequences had already been made. And by my questions, I don't mean to suggest that that is not important, and I don't mean to suggest that the human reaction and emotion of intense frustration is not warranted. That's really not the legal issue before us, which is why I think my colleagues and I are asking questions that don't touch upon that very understandable reaction. Our position is that the zoning ordinance created this prohibition for signs, and they didn't designate the Ohio Cedar Ranch, Michigan, Lakeshore Drive, and then they put the onus on CDOT to designate expressways and toll roads. So our position is if CDOT does this after the fact, after we're turned down, and it's done after the fact, that it would be no difference than if we're turned down and then the city amended the zoning ordinance to provide, to add along with Michigan Avenue and Lakeshore Drive, the Ohio Cedar Ranch. We believe that would be after the fact, and that would be improper. On what basis other than fairness? On a property rights issue, your honor. I mean, if the city wants to prevent us from doing what we have a right to do. Now, for example, if the city allowed construction of buildings in a certain manner, and they determined at some point because of either new evidence that came out in the scientific community or some act of God that the way they have allowed buildings to be constructed in the past were no longer safe, wouldn't they be entitled under those circumstances to change their designation and require retrofitting or remedial action? And while it's not talking about a situation of safety in these circumstances, even if you're right that this designation came later, wouldn't they be entitled to take a new look at these things for aesthetic purposes or safety purposes for drivers or any other consideration that as a body politic that they choose to weigh? Well, their options would be limited. For example, they could change the building code, the zoning ordinance, and they can completely change positions from one way to another. But as just Brian pointed out, every zoning ordinance that we know exists provides for the grandfather clause. We're going to change the law, but that doesn't change the position. But would that be the grandfather clause something that is constitutionally or statutorily required, or is it something that is done in weighing the reasons why the changes are made by the legislative body? In other words, is it not mandatory? Is it an option that a legislative entity has? Or is it required by some constitutional or statutory stricture? Well, if there's a constitutional restriction, it would be due process, and it would also be the rights under the Fifth Amendment. Counsel, was there any procedure to get any kind of predetermination before you even went to the alderman? Because if you would have done that, if that were available, then you would have an arguable estoppel right to be invoked that would not be necessary to get some sort of constitutional inframateur forced. But if that was available and you didn't do it, or your client chose not to, it's understandable why you wouldn't if you have to pass the gauntlet of the alderman and the city council first. But if it was there, doesn't that satisfy even the fairness requirement? I believe that we'd be in the same position we are now because we went to CDOT and asked them, and the position now of the city is, well, we can't be bound by what our individual employees said. If we went to zoning, we don't even know from the record, do we? Who said it? It could have been a low-level employee or it could have been a policymaking employee. We just don't know. And ordinarily, these answers are not made casually. They're generally a product of some research or study or inquiry before they're answered. We identified three or four of the six individuals at CDOT that we spoke with. But, you know, the quality of the evidence here is certainly not what would normally be considered competent evidence in court. Let me ask you this. The record only briefly, you know, refers to five other signs along this same feeder within, you know, 500 feet. If you had established that the zoning administrator had granted these around the same time, that they weren't grandfathered in, then perhaps I think you could show that this was an arbitrary decision. Now, there's only, you know, a reference to these other signs. And the record does indicate that they are clearly located along the same Ohio feeder ramp. But there's no other testimony supporting when they came into existence, whether they were signs that could have been grandfathered in. But I think if that were, if there were evidence in the record to that effect, then you could establish that the decision to deny this was arbitrary. But if there had been five other permits issued for these other signs, subsequent to the passage of this legislation, and they were not grandfathered in. With reference to those signs, it is in the record, actually. They're not with regards to what you're just saying. But the fact that one of them is clear to know, there's an aerial that was taken. Each sign has a city issued permit number attached to it. And the owners of the different signs are identified thereof. But there's no testimony. How would we be able to glean that from the limited transcript that we have? And besides having a permit number, that doesn't tell us when they were issued. That's correct. It does not say when they were issued. Is there anything, Mr. Burke, that precludes you from seeking a permit again and perhaps demonstrating that these other signs were issued subsequent to the legislation and are not conforming? There's nothing that would prohibit us from going again. But our position, Your Honor, is that there is no evidence in the record that a designation was made by CDOT prior to October 14, 2009. But there's nothing in the statute that requires a formal designation? There's nothing that says it has to be in writing? There's nothing. It's just whatever the CDOT determines. Well, CDOT was given the opportunity, obviously, when they were asked by the zoning administrator to write that letter, that memorandum. It was completely within their purview to say, we have, as you mentioned, Justice, we've always considered this, we've always designated this an expressway. Did not. They did not. They said, we consider it an integral part of the expressway system. Well, what case do you support this notion with that there had to be something in writing prior to the hearing before the zoning board to establish that this was part of the expressway? Justice, I'm not saying that it had to be in writing. I'm just saying that there had to be a designation. And there had to be some evidence forthcoming. We couldn't come up with it in our entreaties to CDOT to provide the information. There had to be some indication that it had been designated. There was none until October 14. I'm sort of curious, and it's probably not a record, and so you don't have to answer it if it's not. But there are other access ramps to other expressways in town. Has there been any research done to see how the city treats those access roads to other expressways or even to I-90 or whatever at other entry points? Justice, our only focus was this feed ramp. Anything further you would like to address, Mr. Burke? Yes. I would just like to point out that it seemed to me that the city's position in its reply brief was that the focus is solely on the zoning board of appeals, and therefore since the October 14 memorandum occurred prior to that, that's all that really matters. We believe that this court is reviewing Judge Mason's decision. Judge Mason was reviewing the zoning board of appeals decision. But we're not. We don't review Judge Mason's decision. The law is quite that we review the administrative decision. And it's, you know, unfortunately there was no transcript of what Judge Mason said. We're not reviewing her decision. But it is helpful for a court of review to see what basis the trial judge had when she reversed the zoning board of appeals. And we're at a complete loss. All her order says is that there was no written or there was no order before a date indicating that this was designated an expressway. And it is unfortunate because there was no... It really doesn't say much of anything. Well, except that having sat in the division where Judge Mason was a very fine and well-respected judge set, we were told over and over again, and we were all aware of the law, that when the appellate court reviews the case, they don't review the judge's decision. They have to give a de novo review of the administrative decision. So in the flood of work that judges have to do in that division, it's often the case that their rulings are not written. Sometimes people do, sometimes they don't. And whether it would be helpful or not, it's always helpful to hear what a thoughtful... Is there a research tool of sorts? Well, in her motion to reconsider, she indicated that she had stated those reasons on the record, and I'm sure she did. And having sat there as well, it's not uncommon for the judge to state those findings, and she said she did. Now, neither of the parties had a report of their presence. So I'm not in any way suggesting that Judge Mason didn't have a good reason for doing what she did. But the order that we have doesn't really give us the thought process at all. And, you know, in the end, we're not reviewing what she did. We're reviewing what the zoning court did. And it's clear to me, and it's clear based on... It's clear that the zoning board made its decision based on the October 14th memo, because that's what they cite. And in Judge Mason's order, it's cited also that she finds that since that was created after the fact, after the denial of the permit, that's why she was reversing. Beyond that, I think that's what it boils down to. And we are now three years past the point where my clients began this process, and they're looking for a closure. And so we ask that the zoning board appeals decision be reversed and Judge Mason upheld. Thank you, Mr. Burke. Well, Mr. Henriquez, having given an hour and a quarter to this half-an-hour oral argument, I will ask you if you have any final words. Just a couple. Well, one is just a representation. I think Plaintiff's Counsel made one misrepresentation of the record. And he said that Michael Grachowiak, mentioned in our brief, who's an official of the zoning department of the city, there's testimony that he had conversations with plaintiff's representatives. And counsel represented that he told that Mr. Grachowiak said that the zoning department can't find any designation by CDOT of the expressway. There's nothing at all in the record to support that. That's a misrepresentation of the record. The only other point that I would like to make is counsel makes a general plea to property rights but they make no vested rights argument in their brief, and that would be a very difficult thing for them to prove. They haven't come close to being able to prove it. If there are no further questions, we ask that the ZBA's decision be read in state and the circuit court's decision be reversed. Thank you. We'll take the case under advisement, and I want to congratulate both lawyers for very fine briefs and very fine oral presentation. We'll issue a ruling in due course. We're adjourned. Thank you.